## 12636

### GRAYDON v. GRAYDON *ET AL.*

(147 S. E., 749)

118

"As the case depends in great part upon the evidence of the plaintiff, I think I should first determine if her testimony was admissible; it being objected to by the husband on the ground that a wife could not testify against the husband. I do not think the objection should be sustained. I think the disability applies only where the husband may be accused of some crime, and not in a civil case—particularly where the contest is between the husband and the wife.

"I am satisfied from the evidence that both these young people love this child devotedly, and therefore no matter how I may decide this case, it will be necessary to inflict pain on one of them and possibly both. It will thus be seen that the duty of this Court in the premises is an exceedingly disagreeable one.

"The evidence satisfies me that unquestionably the plaintiff took the child away from the father into another state with the intention of keeping it away, and this without the father's knowledge or consent. This, it seems to me, was a clear violation of the provisions of Section 1 of the Act of 1923 (33 St. at Large, p. 42), which are to the effect that the husband and wife shall have equal rights, duties, and powers as to the child, and neither has any right paramount to the other as to the custody of such child. The taking of such child away from the state without the knowledge or consent of the father, with the intention of keeping it out of the state, is to be construed as a "forcible" taking—the terms employed in the statute.

"But, having heard the whole case, this Court is not disposed to, and will not, judge Mrs. Graydon too harshly. No doubt she was ignorant of the provisions of the statute referred to, and, although ignorance of the law is no excuse, we do not forget that the husband also took the child away from its mother without *her* knowl-

edge or consent, and brought it back to this state. The Act above referred to, provides in Sec. 2, that in proceedings such as we are now considering, *the welfare of the child* shall be the prime consideration of the Court. This I think is simply putting into statutory enactment that which had been the practice of the Courts of equity of this state for the past 30 or 40 years, with few, if any, exceptions.

"Therefore, if there be any conflict, real or apparent, between the legal rights of a parent and the welfare of the child, the former must always be subordinated to the latter.

"This young husband and wife had no home of their own, but, at the time of the estrangement, and for several years previous thereto, had been living in the home of Mr. and Mrs. W. N. Graydon, the parents of the defendant W. M. Graydon, in the City of Columbia. Young Mr. Graydon, the defendant, explained both in his testimony and in his argument that this arrangement was necessary on account of the ill health of both his father and mother. He also explained that his fianceé, whom he later married, knew before their marriage that this would be the arrangement. The household consisted of Mr. and Mrs. W. N. Graydon, the grandparents of the child, their two daughters, the child in question, and the plaintiff and her husband. The testimony satisfies me that the plaintiff was treated with great kindness by all of her husband's family, and that there was nothing of any moment as to their treatment of her that she could complain.

"She alleges in her complaint, however, and also testifies, that her husband was addicted to the strong drink habit, frequently coming home intoxicated and quarrelsome, and on such occasions made her home life miserable.

"She also testifies that she stood this as long as she could and then left him. The husband denies emphatically, and so testifies, that he was ever unkind to his wife, or that he was often intoxicated, but admits that he did, and does, take a drink whenever he feels like it, etc., and on occasions has been drunk; that he considered it a "God given right" to take a drink whenever he felt like it. Parenthetically, I will say

that the exercise of this "God given" right has been the destruction of many homes that would otherwise have been very happy. Mrs. Graydon, the plaintiff, also testifies that her husband failed to furnish her suitable and proper clothes for herself and child, etc., which he denies—both in his return and in testimony.

"The husband strenuously contends that the plaintiff's parents are responsible for the estrangement of himself and wife, and that he warned his wife several years ago that this would be the case; that she had spent nearly half her married life with her parents over his protest. That she *did* spend a great deal of her time with her parents I am satisfied, and, if she was really loved by her husband, it was but natural that he should object.

"Whether or not the parents of Mrs. Graydon were wholly or in great part responsible for the separation I cannot certainly determine from the evidence. They may have done so with the belief that the husband was an habitual user of alcoholic liquors, and was making the life of their daughter an unhappy one on this account, and that it would be better for her to leave him.

"There was a great mass of testimony and exhibits introduced, most of which is either not germane to the issue or only remotely bears on it. I have barely touched on it, not deeming any extended discussion of it as necessary for the determination of the matter before me.

"One matter which I wish to dispose of in passing is that the evidence showed that a petition was filed with the juvenile Court of the City of Columbia by Mr. and Mrs. W. N. Graydon, the grandparents of the child, asking that the custody of the said child be awarded to them —that it was to her best interest, etc., and thereupon the said Court, with the consent of the father of the child, awarded her custody to the said petitioners. The mother of the child, Floride, was never properly served with the petition in said matter, and appeared by attorney in said Court only for the purpose of objecting to the jurisdiction.

These proceedings took place after Mr. W. M. Graydon had brought the child back to this state.

"In my view, the Juvenile Court had no authority under the act which created it to pass upon the conflicting rights of a husband and wife as to the custody of a child. And certainly in this case no claim, or even intimation, was made that the conditions as to the child, Floride, existed, which would have given the said Court the right to pass an order as to its custody.

"After careful study and consideration of this case, ■ I feel that the best interest of this child demands that I award her custody to its mother for the greater part of its time, and, when she reaches such age as to intelligently choose between them, then this Court may allow her to do so. At present she appears to be very hostile to the mother. I can state this because I had a short talk with her in my private office with no one present. This is a very unnatural situation, and one for which I cannot account, unless it be that she has been influenced, perhaps unconsciously, by the feelings of those around her towards the mother. There is a good deal of evidence that the father, grandmother, and grandfather tried to teach her to love her mother, etc, but if the child knew from what she heard around her that her father and grandparents were hostile to the mother, it was only natural that she should absorb the same feeling.

"However, I am satisfied that the mother loves her child very dearly, and that short time only will be required to enable her to regain the child's love.

"The evidence is overwhelming that the mother is a fit and proper person to raise her child. It is true that an apartment house is not such an ideal place for this purpose as a home, but the mother at present is living in a good one, and in a town with good school facilities, and near the school, from which the child was taken.

"While I do not think that the settlement of the issue before me requires that I give judgment as to where the blame lies for the separation of this couple, still there is so much

evidence on the subject of the drinking habits of the husband that I do not think that I should pass this by without some mention. It is impossible, for me at least, to escape the conclusion that such habits of the husband were in large part, if not the moving cause, of this separation. The evidence satisfies me that not only the father, but the grandparents and aunts of this child, love her very dearly, but, with the exception of the grandmother, none of these people can remain at home to rear and care for the child, but during the day they are at work away from the home. Again, in the rearing of a child, particularly a girl, no one can fill the place of a loving mother. The grandparents are both in bad health, and are already over in the twilight zone of life. I am not unmindful of the fact that, as expressed by the Court in one of our cases similar to this, the right of a child to be raised under its father's rooftree is a "priceless heritage." But I feel that a more precious heritage is the right of a child to be reared by a God-fearing, loving mother.

"I have no inclination or disposition, however, to deprive the father entirely of the society of his only child, and I do this at all only because necessity impels me to do it.

"The judgment of this Court is therefore, that the custody of the child, Floride, be delivered over to its mother, the plaintiff, Ida Fripp Graydon; that the said Ida Fripp Graydon have such custody and possession of the said girl child for ten months of each year until it becomes of age, or until the further order of this Court, and that for two months of each year, at a time when such child is not in attendance at school, the plaintiff shall turn over the custody of said child to its father, the defendant W. M. Graydon.

"Since, however, the mother, the plaintiff herein, lives in another state and out of this jurisdiction, she shall enter into bond in the sum of $2,500, payable to the state of South Carolina, conditioned that she will comply with the conditions and directions of this decree, and such other orders as this Court may make in the premises. Such bond shall be given with a surety company, or personal surety or sureties

residing in this state, satisfactory to, and approved by the clerk of this Court, with whom said bond shall be filed.

"In lieu of said bond, the said plaintiff may deposit with said Clerk the sum of $2,000, which may be represented by a certificate of deposit, payable to the Clerk of Court of Richland County, in a bank to be *approved* by said Clerk, and to be changed from time to time if the clerk so desires, and the interest on such fund or certificate of deposit as and when the same accrues may be paid to the plaintiff.

"No possession of the custody of said child shall be given plaintiff until the said bond or deposit be executed and delivered to the Clerk of Court for said County of Richland. Failing to give such bond or deposit, the said child to remain in the possession of its father and in this jurisdiction, unless the plaintiff, its mother, comes back to reside in this state, and in such event, after possession of said child is turned over to her, she shall not take same out of this state to reside without an order of this Court.

"The matter of the support and maintenance of the child is not in issue before me, and as to this I express no opinion.

"The sheriff of Richland County is directed to serve a certified copy of this order on each of the defendants and to take charge of and deliver the infant child into the custody of its mother at such place in Columbia, S. C., as the said mother may request."

*Mr. D. W. Robinson,* for appellant,

*Mr. W. M. Graydon,* for respondent.

April 9, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This Court is satisfied with the conclusions reached by his Honor, Judge Rice, and, for the reasons stated in his decree the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.